## COOPER JOHNSON v. THE STATE.

### No. 3258. Decided November 4, 1914.

### Rehearing denied November 25, 1914.

**1.—Local Option—Transporting and Delivering Intoxicating Liquors—Legislative Power.**

The Legislature has power to adopt remedial legislation in aid of the enforcement of the prohibition law, and the contention that the Allison Law prohibiting the unlawful transportation, carriage and delivery of intoxicating liquors into local option territory was invalid because it was enacted after prohibition had been adopted in the county of the prosecution is untenable. Following Fitch v. State, 58 Texas Crim. Rep., 366.

**2.—Same—Constitutional Law—Intoxicating Liquors—Allison Law.**

The Act of the Legislature known as the Allison Law prohibiting the unlawful transportation, carrying and delivering of intoxicating liquors into local option territory except by a person who is a resident therein for his personal use, etc., is constitutional. Following Ex parte Muse, 74 Texas Crim. Rep., 76, and other cases. Davidson, Judge, dissenting.

**3.—Same—Indictment—Statutes Construed.**

Where the indictment charged the defendant with unlawfully transporting, carrying and delivering intoxicating liquors into local option territory, there was no error in overruling a motion to quash the indictment on the ground that the Act of the Legislature under which the prosecution was brought was enacted after prohibition had been adopted in the county of the prosecution. Davidson, Judge, dissenting.

**4.—Same—Indictment—Voting Precinct.**

In a prosecution for unlawfully transporting, etc., intoxicating liquors into local option territory and delivering the same to another, it was not necessary to allege the names of the various voting precincts in the county of the prosecution, the allegation that prohibition had been adopted therein, etc., being sufficient.

**5.—Same—Indictment—Pleading—Several Offenses.**

Where the indictment charged that the defendant on a certain date in the county of the prosecution, wherein prohibition was in force, did unlawfully transport, carry and deliver one quart of intoxicating liquors to "H.," etc., a complaint that the indictment charged three separate offenses is without merit, as the offense could be alleged to have been committed in all of the ways set out in the statute, and proof that the offense was committed in either of the ways alleged would sustain the conviction.

**6.—Same—Rule Stated—Several Offenses—One Count.**

If several offenses are embraced in the same general definition and are punishable in the same manner, they are not distinct offenses, and may be charged conjunctively in the same count. Following Howell v. State, 29 Texas Crim. App., 592, and other cases.

**7.—Same—Sufficiency of the Evidence—Case Stated—Allison Law.**

Where the indictment alleged and the proof showed that defendant procured intoxicating liquors from some other point in this State and did trans-

Vol. 75 Crim.-12

port, carry and deliver the same to another person in the county of the prosecution in this State, where prohibition was in effect, and the evidence wholly failed to show what use said party to whom the liquor was delivered intended to put the same when he received it, and the question of personal use was not raised by the evidence (and need not, therefore, be discussed), the defendant is guilty under section 4 of the so-called Allison Liquor Law, Act of the Thirty-third Legislature. Prendergast, Presiding Judge, concurring, holding that even if the party receiving designed it for personal use the law was violated. Davidson, Judge dissenting.

### 8.—Same—Evidence—Circumstances—Receptacle of Liquors.

Where defendant was prosecuted for carrying, transporting and delivering whisky in prohibition territory for illegal purposes, there was no error in admitting testimony as to the contents of a certain valise in which it had been carried, and permitting the valise to be opened in the presence of the jury and introducing it and its contents in evidence, the same having been sufficiently identified.

### 9.—Same—Evidence—Intoxicating Liquor—Bottles in Evidence.

Where defendant was being prosecuted for carrying, transporting and delivering whisky into prohibition territory for illegal purposes, there was no error in admitting testimony that the bottles containing the whisky and introduced in evidence in fact contained whisky. Davidson, Judge, dissenting.

### 10.—Same—Evidence—Circumstances—Identity of Defendant.

Where, upon trial of carrying, transporting and delivering whisky in prohibition territory for illegal purposes, defendant contended that it could not be shown that he had handled a certain grip or valise containing the whisky designed for a person residing in prohibition territory, there was no error in admitting testimony that the grip was handed out by someone in the railway coach to another person who ran and threw the grip under the coach when the officers approached; it being show that the grip had defendant's name on it and the circumstances rendered it certain that defendant was the man who handed the grip out of the coach.

### 11.—Same—Evidence—Res Gestae—Other Liquor.

Where defendant was charged with carrying, transporting and delivering one bottle of whisky into prohibition territory for illegal purposes, and it was developed on trial that the same was carried in a certain grip owned by the defendant, there was no error in permitting the entire contents of the grip containing twelve bottles of whisky to be introduced in evidence.

### 12.—Same—Charge of Court—Several Offenses.

Where defendant was charged with carrying, transporting and delivering whisky in prohibition territory for illegal purposes, a conviction could be had if the offense was committed in either of the ways alleged in the indictment, and there was no error in so instructing the jury. Following Copping v. State, 7 Texas Crim. App., 61.

### 13.—Same—Several Means Alleged—Delivery.

Where defendant was charged with carrying, transporting and delivering whisky in prohibition territory for illegal purposes, a conviction would be authorized even if the whisky was not delivered, the evidence showing that defendant transported and carried the same as alleged in the indictment; besides, the delivery by defendant to a go-between was a delivery to the party intended.

### 14.—Same—Agency—Sale.

Where defendant was prosecuted for carrying, transporting and delivering intoxicating liquors into prohibition territory for illegal purposes, and merely acted as the agent of the person to whom he carried and delivered the liquor,

the question of sale of same and a violation of the law on that ground was not involved. Harper, Judge, dissenting.

### 15.—Same—Agency—Sufficiency of the Evidence—Use—Purpose.

Where defendant was prosecuted for carrying, transporting and delivering intoxicating liquors into prohibition territory for illegal purposes, and the proof sustained the allegations, and showed that he acted as the agent of the person to whom the liquor was delivered, the evidence wholly failing to show to what use the liquor was intended to be put when received, defendant is guilty of a violation of section 4 of the so-called Allison Law. Prendergast, Presiding Judge, concurring, holding that it was immaterial for what use the liquor was intended. Davidson, Judge, dissenting.

### 16.—Same—Negative Averments—Personal Use Not Involved.

Where defendant was charged with carrying, transporting and delivering intoxicating liquors into prohibition territory for illegal purposes, it was not necessary to negative any of the exceptions set out in the statute (although this was done), and if the evidence showed that defendant did either carry, transport or deliver to another in prohibition territory intoxicating liquors, the case is made out against him, unless defendant brings himself within any of the exceptions, and the question of personal use is not raised and need not be discussed.

### 17.—Same—Sufficiency of the Evidence—Introducing Liquors—Delivery.

Where, upon trial of carrying, transporting and delivering intoxicating liquors into prohibition territory for illegal purposes, the evidence sustained the conviction under a proper charge of the court, there was no reversible error. Davidson, Judge, dissenting.

### 18.—Same—Personal Use—Statutes Construed.

See opinion, Harper, Judge, holding as there is no testimony that the whisky carried, transported and delivered into prohibition territory was intended for personal use (that question need not be discussed), the conviction is sustained. Prendergast, Presiding Judge, holding that if defendant so carried and delivered said liquor, he was guilty regardless as to what use the person receiving it should make of it. Davidson, Judge, holding that the mere carrying, transporting and delivering of said liquor by defendant to another into prohibition territory would not be a violation of law under the Constitution of Texas, which only prohibits the sale of such liquor.

Appeal from the District Court of Lampasas. Tried below before the Hon. John D. Robinson.

Appeal from a conviction of carrying, transporting and delivering intoxicating liquors into local option territory for illegal purposes; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*T. S. Alexander* and *Word & Walker,* for appellant.—On question of insufficiency of indictment: Head v. State, 64 Texas Crim. Rep., 112, 141 S. W. Rep., 536; Ex parte Pollard, 51 Texas Crim. Rep., 488, 103 S. W. Rep., 878; Lewis v. State, 58 Texas Crim. Rep., 351, 127 S. W. Rep., 808; Doyle v. State, 59 Texas Crim. Rep., 60, 127 S. W. Rep., 815.

On question of unconstitutionality of law: Holley v. State, 14 Texas Crim. App., 505; Stalworth v. State, 16 id., 345; Steele v. State, 19 id., 425; Bottoms v. State, 73 S. W. Rep., 16; Stephens v. State, 73 S. W. Rep., 1056; Ex parte Massey, 92 S. W. Rep., 1083; Ex parte Brown,

42 S. W. Rep., 554; Dozier v. State, 62 Texas Crim. Rep., 258, 137 S. W. Rep., 679.

On question of admitting evidence of valise and its contents: Beaty v. State, 53 Texas Crim. Rep., 432, 110 S. W. Rep., 449; Schwulst v. State, 52 Texas Crim. Rep., 426, 108 S. W. Rep., 698.

On question of insufficiency of the evidence and charge of court: Clay v. State, 65 Texas Crim. Rep., 402, 144 S. W. Rep., 280; Nicholson v. State, 87 S. W. Rep., 343; Bittix v. State, 87 S. W. Rep., 348; James v. State, 91 S. W. Rep., 227.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, Judge.—The indictment in this case alleges that prohibition was in force in Lampasas County, and that appellant on or about March 11, 1914, did unlawfully transport, carry and deliver one quart of intoxicating liquor to Horace Griffin, within prohibition territory in this State, from a point within this State to the grand jurors unknown.

Appellant moved to quash the indictment because the Act of the Legislature under which this prosecution was brought was enacted after prohibition had been adopted in Lampasas County, making the same argument as heretofore made, that the Legislature was without power to adopt remedial legislation in aid of the enforcement of the prohibition law, and to prevent illegal sales being made. This question was so thoroughly discussed in the case of Fitch v. State, 58 Texas Crim. Rep., 366, we do not deem it necessary to do so again. The contention that the Legislature was without power and authority to pass the law was also held adversely to appellant in the Fitch case, supra. As said in that case, "it would be a monstrous doctrine to hold that the Legislature is powerless to enact legislation defining offenses for new conditions that may arise under the prohibition law," and if the new enactment has for its object and purpose to aid in the prevention of illegal sales, it is to be commended and not condemned. As to the constitutionality of what is known as the Allison law, this court has heretofore upheld its constitutionality. Ex parte Muse, 74 Texas Crim. Rep., 476, 168 S. W. Rep., 520, and Ex parte Peede, decided at this term and not yet reported.

Neither was it necessary in the indictment to allege the names of the various voting precincts in the county—the allegations that on the 30th day of November, 1910, an election was held under proper authority, and that prohibition has been adopted, etc., was sufficient, without naming the various voting boxes in the county.

The complaint that the indictment charges three offenses and is therefore void is, we think, without merit. Section 4 of the Allison law (page 63, Session Acts, 33rd Leg.), makes it an offense for any person to ship, transport, carry or deliver intoxicating liquor to any other person in prohibition territory, except as otherwise provided in the Act. The offense may be alleged to have been committed in all of these ways, and proof that the offense was committed in either of the ways alleged would sustain a conviction. The fact that the pleader could have elected to

charge that he committed the offense defined in this section in only one of the ways, does not prevent him from also charging that defendant committed the offense in all of the four ways mentioned by use of the conjunction "and" instead of "or." In Comer v. State, 26 Texas Crim. App., 509, it was held by this court that if several offenses are embraced in the same general definition, and are punishable in the same manner, they are not distinct offenses, and may be charged conjunctively in the same count. (See also Howell v. State, 29 Texas Crim. App., 592; Laroe v. State, 30 Texas Crim. App., 374; Holman v. State, 90 S. W. Rep., 174; Prendergast v. State, 41 Texas Crim. Rep., 358; Morris v. State, 57 Texas Crim. Rep., 163, and cases cited.)

The facts in this case would authorize a jury to find that appellant approached Horace Griffin, who was in Lampasas, Lampasas County, a county where prohibition was in force, and solicited an order for intoxicating liquors, in that he told Griffin he was going after whisky, and asked him if he wanted some. Griffin replied that he wanted two quarts. He then paid appellant $2, and told him he wanted bonded goods, either Hill & Hill or Jersey Cream. Appellant then told him his part of the expense would be 55 cents, and Griffin paid this amount in addition to the price of the whisky. Appellant for some reason did not want to take his valise on the train, and asked Griffin to have Ford Mitchell do so, and this Griffin did. Ford Mitchell carried the grip or valise to the train, and procured Douglass Finley to carry it on the train. This grip had appellant's name on it, and witnesses testify that it was light at this time and did not have anything in it unless some light clothing. Appellant is traced on this train to Belton, where he tells witness Barnes he is going to Temple. He is traced back from Belton to Lampasas. When he gets back to Lampasas he hands the valise out of the car window to Ford Mitchell, and then gets off the train. Officer Mace sees Ford Mitchell take the valise out of the window, and when he attempts to arrest him, Mitchell throws the valise under the train. The officer has Mitchell to secure the valise, and when appellant is apprehended the key to the valise is secured from him, and in the valise are found twelve quarts of whisky—five Jersey Cream, two Cascade, four Sunny Brook, and one Hill & Hill, all bonded goods, two of which were intended for Griffin. It is thus made apparent that appellant secured twelve quarts of whisky either in Belton or Temple, carried and transported it to Lampasas, and handed it to Ford Mitchell. These facts we think the record shows beyond question.

Bill of exceptions No. 4 is not in the record before us, and in bill No. 5 appellant complains of the fact that the court allowed the district attorney to open the valise in the presence of the jury and introduce it and its contents in evidence on various grounds. This valise had been identified as the one carried to the depot by Ford Mitchell and placed on the train by Douglass Finley, as the valise handed out of the car window ·to Ford Mitchell, and which the officer secured from him at the time of the arrest. The officers testified it was in the same condition that it was in at the time it was taken from Mitchell's possession, and under

such circumstances there was no error in admitting it and its contents in evidence. It also appears by another bill that when Mr. Mace testified that the bottles contained whisky, the defendant objected to him being permitted to so testify, "because the bottles were sealed up" and the contents was the best evidence. The court then permitted the district attorney to unseal one of the bottles and hand it to the witness Mace, who then swore that he knew it contained whisky. As appellant was being prosecuted for carrying, transporting and delivering whisky in prohibition territory for illegal purposes, there can be no question of the admissibility of this testimony—it would settle and did settle beyond question as to what was the contents of the valise.

Appellant also objected to Officer Mace being permitted to testify: "I saw Ford Mitchell going to the negro coach, and saw a negro's arm handing this grip out to him, and when Ford Mitchell saw him, he (Ford) run and shot the grip under the coach," the objection being that it was not shown that it was defendant who handed the grip to Ford. Several witnesses testify that there were but two negroes in this coach when it got to the depot—appellant and John Barnes. John Barnes testified that when he went out of the coach he left appellant and appellant alone in the coach; the grip had appellant's name thereon, and by exclusion at least the evidence makes it virtually impossible for it to have been any other person than appellant who handed it out. The facts and circumstances render it as certain as it is possible for circumstantial evidence to show any fact—it excludes every other reasonable hypothesis.

The contention that it was not shown to be appellant's grip can not be sustained. The evidence and all the evidence shows this beyond question. Neither did the court err in permitting the entire contents of the grip, the twelve bottles of whisky, to be introduced in evidence, even though appellant was charged with carrying, transporting and delivering only one bottle. The evidence was *res gestae* of and a part of the transaction alleged.

Appellant objected to the charge of the court in one particular only—the indictment alleging that appellant "did carry, transport *and* deliver," he insists the court erred in authorizing a conviction if the jury found appellant "carried, transported *or* delivered"—this time contending that the indictment alleged only *one* offense, and appellant must be shown to have carried, transported *and* delivered, all three, before a conviction could be had, while in the motion to quash he had contended that it charged three separate and distinct offenses. As before stated, if several offenses are embraced in the same general definition, and are punishable in the same manner, they are not distinct offenses, and may be charged conjunctively in the same count, yet a conviction may be had if the offense is committed in either of the ways alleged. (Copping v. State, 7 Texas Crim. App., 61.) This rule of law has always been followed in this court and is stated to be the correct rule by Mr. Bishop and other text-book writers.

The court did not err in refusing the peremptory instructions re-

quested, nor did he err in refusing the instructions that if a delivery was not made to Horace Griffin in person to acquit. We are of the opinion that under the facts and circumstances in this case, the delivery to Ford Mitchell was a delivery to Horace Griffin, but if that be not a correct deduction from the evidence, a conviction would be authorized under the other means alleged in the indictment of violating the law. We do not think the evidence raises the question of appellant being an agent of Horace Griffin, but on the other hand shows an illegal solicitation of an order for the sale of intoxicating liquor, which contemplated a· delivery by appellant to Griffin of the liquor in prohibition territory, and as he received a profit over and above the price of the whisky—fifty-five cents—this would constitute a sale in the prohibition territory. But inasmuch as my associates on the bench hold that the evidence would not support a finding that it was a sale (in which view I do not concur), the evidence beyond peradventure of doubt shows that appellant approached Griffin and to use Griffin's own language the following took place: "I know Cooper Johnson. I saw him in Lampasas about the 11th day of last March. I was employed then at the Wachendorfer hotel. It was before noon. He said he was going down the road, either to Temple or Belton. It was in the morning before the Santa Fe was due. He asked me if I wanted to send down there for some booze. I gave him $2.55. It was for two quarts. I told him to bring me two quarts of bonded whisky. I said Hill & Hill or Jersey Cream. I gave him $2 for whisky and the 55 cents was for railroad fare. He did not say what the railroad fare would be, but said my part was 55 cents. He said he would be back that evening." Taking all other facts and circumstances in evidence, the writer thinks it but a cloak for a sale, and if a proper submission of the issue, under an indictment charging him with making a sale, had been given the jury, we would sustain a finding that it was a sale. However, as my associates view the testimony otherwise, I will not place the affirmance on that ground, but will discuss the case from their standpoint that it made appellant the agent of Griffin. This I do not understand to be a correct view, since section 6 of the Allison law makes it a felony to solicit or take orders for whisky in prohibition territory. Under the evidence he could be prosecuted for soliciting this order from Griffin for whisky, getting thereby a part of his railroad fare paid, to say the least, and this court would sustain such conviction, and, therefore, he would be carrying and transporting this whisky for an illegal purpose, to fill an order he had theretofore solicited.

But, in the event it is held that he by these acts was merely the agent of Griffin, and that he was merely carrying the whisky to his principal, having no other connection therewith, the evidence in this case wholly fails to show what use Griffin intended to put the whisky when he received it, and the question of whether one can have whisky shipped to him for personal use is not raised by the evidence, and need not be and should not be discussed. Griffin testified he was not a member of Cooper Johnson's family; that he was not a minister of the gospel; in

fact, there is no evidence tending to bring appellant within the exceptions—that he was carrying or transporting it to Griffin for any of the purposes which have been excepted from the provisions of the law. Section 4 as applicable to this case reads: "Except as otherwise provided in this Act, it shall be unlawful for any person to ship, transport, carry or deliver any intoxicating liquor to any other person in this State." The offense is thus defined, and in the indictment it is not necessary to negative any of the exceptions. And when the State proves on the trial that the person on trial did carry and transport to another in prohibition territory intoxicating liquor, it has made its case. If the defendant wishes to bring himself within any of the exceptions, he must offer some proof, else the issue is not raised. If one kills another, upon proof of that fact the State has made its case. If a defendant relies upon that portion of the statute which exempts him from punishment, he must offer proof of that fact, otherwise the issue of self-defense is not raised.

If one carries a pistol, proof by the State that he did have a pistol makes its case; if appellant relies on the exceptions, that he was a traveler, or that he was merely carrying it to his home, he must offer proof of that fact, else the issue is not raised, and a conviction is authorized on mere proof that he had a pistol.

So in this case, when the State proved that appellant had carried and transported whisky from Temple or Belton for delivery to Griffin in Lampasas (where prohibition prevails) the State has made its case, and a conviction was authorized and will be sustained. If appellant desired to bring himself within any of the exceptions, being separate articles of the statute, and not included in the definition of the offense, he should have offered some proof. The record is plain that appellant carried it to be delivered to Griffin; the record is silent as to the use Griffin intended to put the liquor to. So the question of whether one may carry or transport liquor to another in prohibition territory for the personal use of such person is not raised, nor even suggested by the testimony, and, therefore, we do not deem it necessary to discuss that question. And the mere fact that appellant was the mere agent of Griffin does not raise that question when there is no evidence as to the use Griffin intended to put the whisky to. Griffin himself had no right to carry the whisky into the territory except for his own use, and his agent could have no greater right than the principal, and if Griffin had carried the whisky into the prohibition territory, and the State proved that fact, he could be convicted unless he should offer some evidence that it was for his own use, or the use of members of his family. And as there is no testimony that the whisky was so intended to be used, even if appellant should be held to be merely an agent of Griffin, we will not discuss that theory of the case, although my associates do so, taking opposite views on that question.

The only other bill of exceptions in the record complains of the action of the court in refusing to give a special charge wherein appellant requested the court to charge the jury that they should acquit unless

they found beyond a reasonable doubt that appellant *carried, transported and delivered* the liquor to Griffin—that is, did all three things alleged. This is not the law, for he could be convicted for having done either of three things alleged.

The facts in this case, to our minds, show that the whisky was being carried into Lampasas County for a purpose prohibited by law. The evidence shows that appellant approached Horace Griffin and asked if he wanted some whisky, and Griffin told him he did—he wanted two quarts. Appellant accepted the money for the whisky, with an understanding that he was to secure the whisky and deliver it to Griffin in Lampasas. He not only accepted the price of the whisky, but collected 55 cents extra—getting a profit over and above the price of the whisky for himself. The facts show an illegal transportation and carriage. There has never been any doubt in our minds, and since the passage of the Webb-Kenyon Act, we do not think there can longer be any question that a law of the State prohibiting the carrying and transportation of intoxicating liquors into prohibition territory for the purpose of making illegal sales thereof or for any other illegal purpose is valid and violative of no provision of the Constitution, either State or Federal.

Being of the opinion that the law prohibiting the carrying, transportation and delivery of whisky into prohibition territory for the purpose of making sales thereof in violation of law or for any other illegal or unlawful purpose is valid, and that the evidence in this case makes it clear that appellant was carrying and transporting this whisky into prohibition territory for an illegal purpose, the judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE, dissenting.

PRENDERGAST, PRESIDING JUDGE.—As the indictment alleged, and the proof showed, appellant procured intoxicating liquor from some other point in this State, and did "transport, carry and deliver" it to Griffin, in Lampasas County, in this State, where prohibition was in effect, he is guilty, and I agree to the affirmance of the judgment. To "transport" means exactly the same thing as to "carry."

I base my concurrence in the affirmance of the judgment solely on the ground that appellant *carried and delivered* the liquor to Griffin in prohibition territory wholly regardless of what use Griffin had for it, or intended to put it to, and wholly regardless of what appellant did other than that he carried it and delivered it to Griffin. (Sec. 4, Allison Act, approved August 21, 1913, p. 62.) There is no evidence which shows or tends to show that Griffin intended the liquor for any unlawful purpose whatsoever; but, as I understand it, it tends to show he had it brought and delivered to him for his own use.

Appellant was in no way prosecuted for selling the liquor to Griffin, and as I understand the evidence, he in no way made a sale of it to Griffin, but as I understand the law and the uniform decisions of this court, some of which are cited in section 569, Branch's Criminal Law, he acted in the transaction merely as the agent of Griffin and not other-

wise. However, even if he had made a sale of it to Griffin that could not affect the question, for he was in no way prosecuted for making a sale to Griffin nor for carrying it and delivering it in Lampasas County for that purpose, but solely for carrying and delivering it to him.

So, even if he illegally solicited an order for the sale of it, that could have no bearing whatever on the case, or any question in it, for he was in no way prosecuted for that offense.

The Webb-Kenyon Act of the Congress has no possible bearing on this case or any question in it.

[Rehearing denied November 25, 1914.—Reporter.]

DAVIDSON, Judge (dissenting).—I can not agree with the result reached in this case. Judge Harper holds that the facts show a sale, and therefore punishable under the charge of carrying intoxicants into local option territory. Presiding Judge Prendergast holds the facts do not show a sale but only an agency on part of appellant, and nothing else. I agree with Judge Prendergast on this phase of his concurring opinion. Appellant was charged with violating what is known as the Allison bill, the allegation being that he transported, carried and delivered to Griffin whisky in local option territory. The State's case, therefore, must rest upon these allegations. Griffin gave appellant two dollars with which to buy him two bottles of whisky, and fifty-five cents to pay or assist in paying his railroad fare to Belton or Temple and return. Appellant bought the whisky in one of the towns mentioned for Griffin with Griffin's money. This constituted him the agent of Griffin. I do not see how, by any possible construction of this testimony, it could be correct to hold that appellant sold Griffin the whisky. If it was a sale appellant violated the local option law in Lampasas County, but he was not charged with this offense, and the facts do not support it. The authorities sustaining my views of it are found collated in Mr. Branch's work on Criminal Law, section 569. Quoting from that work: "If defendant is in no way interested on behalf of the seller, but is simply acting as agent of prosecutor, he is not guilty of making a sale." Key v. State, 37 Texas Crim. Rep., 77; Reed v. State, 44 S. W. Rep., 1093; Crawford v. State, 76 S. W. Rep., 576; Blasingame v. State, 47 Texas Crim. Rep., 582; Rector v. State, 90 S. W. Rep., 41; Short v. State, 49 Texas Crim. Rep., 244; Bowman v. State, 35 S. W. Rep., 382; Brignon v. State, 37 Texas Crim. Rep., 71; Kirby v. State, 46 Texas Crim. Rep., 584; Way v. State, 36 Texas Crim. Rep., 40; Gaston v. State, 102 S. W. Rep., 116; Hood v. State, 35 Texas Crim. Rep., 585; Crawford v. State, 58 S. W. Rep., 1006; Johnson v. State, 44 S. W. Rep., 834; Phillips v. State, 40 S. W. Rep., 270. It was also held if there is evidence that the accused bought liquor from another as agent of the purchaser, and that he was in no way interested on behalf of the seller, it is error to refuse a charge affirmatively presenting this issue. Campbell v. State, 37 Texas Crim. Rep., 572; Treue v. State, 44 S. W. Rep., 829; Strickland v. State, 47 S. W. Rep., 720; Driver v. State, 48 Texas Crim. Rep., 20; Golightly v. State, 49 Texas Crim. Rep., 44;

Evans v. State, 55 Texas Crim. Rep., 450; Wright v. State, 35 Texas Crim. Rep., 581. These authorities settle the question that this was and could not constitute a sale. If any illegality existed or could possibly arise under the facts of this case, it was that appellant bought whisky in Temple or Belton for Griffin and carried it to him at Lampasas, and was, therefore, acting as his agent. If he violated any law it is that clause of the Allison bill which prohibits transporting, carrying and delivering whisky in local option territory. Judge Prendergast holds this part of the Allison bill valid. With this view I can not concur. Some of our courts have gone far enough to say that the citizen may be punished for storing intoxicants in local option territory for illegal selling purposes, and this seems to rest upon the theory that this can be prevented because of anticipated sales to occur in the future. That question does not arise in this case, because the evidence is conclusive that the whisky belonged to Griffin and was carried by his agent, appellant, to him in Lampasas County. So we have this question: Can a citizen be punished by confinement in the penitentiary for carrying whisky into local option territory with no possibility of violating the local option law? The Allison law is dependent for its existence on the local option law. When the local option law passes out that dies for want of something to keep it alive. With whatever far-reaching power and authority the Legislature may be clothed, under the Constitution of Texas, article 16, section 20, that power is circumscribed to prohibiting selling in local option territory. There is no question, I would suppose, at this late day in Texas that this law does not authorize the punishment of the citizen for giving away whisky and can not legally—the Allison bill to the contrary notwithstanding. Under all the authorities it has been held that the giving of intoxicants in local option territory could not constitute a violation of that law. This has been held even as to giving it to minors. If the party gave to minors he would have to be punished for violation of the local option law. Atkinson v. State, 46 Texas Crim. Rep., 229; Tracy v. State, 48 Texas Crim. Rep., 49; Tompkins v. State, 49 Texas Crim. Rep., 154. This court has held the Legislature had no authority to authorize an election to determine whether the gift of intoxicating liquors shall be prohibited,—whether the gift was with intent to evade the law or not. Holly v. State, 14 Texas Crim. App., 505; Bottoms v. State, 73 S. W. Rep., 16; Steele v. State, 19 Texas Crim. App., 425. It was also held in Stallworth v. State, 16 Texas Crim. App., 345, that an indictment for ordinary local option violation which charges a gift charges no offense. For many cases deciding this particular phase of the law see Branch's Criminal Law, section 567. As I understand the law, viewed in the light of the constitutional guaranty and wording of section 20, article 16, the Legislature can not prohibit the citizenship of this State from conveying to his friend or giving to his friend or to his principal as his agent intoxicating liquors in local option territory so long as he does not violate some of the inhibitions with reference to sales or illegal matters of that character. An accused does not have to prove his

innocence; the State must prove guilt to secure a conviction. In other words, the Legislature can not make it a felony and incarcerate our citizenship in the penitentiary even in local option territory where one friend gives to another intoxicants, or where one citizen gives to another citizen intoxicants or buys it as agent of· the principal; and I understand the law to be further that the Legislature can not abrogate or abolish the law of principal and agent; that the Legislature is powerless to abolish the law and doctrine of agency. If appellant was guilty, I do not understand why Griffin was not, on the theory of agency. Griffin could be an accomplice on that theory. This certainly would pass even the limit of the power of the Legislature. The principal may do through his agent what he himself may do. The Allison law authorizes the principal to carry the whisky into local option territory for his own use. I therefore agree with Judge Prendergast that appellant was only the agent of Griffin, but disagree with him as to his conclusion of the validity of the Allison bill on this question, and disagree with Judge Harper that the facts constituted a sale by appellant to Griffin.

With due deference to the opinion of my brethren I respectfully enter this dissent.