## RAY WILSON V. STATE

No. 27,933. January 25, 1956.
Appellant's Motion for Rehearing Denied April 18, 1956.

Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) May 9, 1956.

*Carl Cannon,* Groesbeck, and *Bowlen Bond,* Teague, for appellant.

*Joe Schultz,* former County Attorney, *Lewis M. Seay,* County Attorney, Mexia, *Bradley & Geren,* by *L. L. Geren,* Groesbeck, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The conviction is for murder with malice; the punishment, ten years in the penitentiary.

This is the second appeal of this case, the first conviction having been reversed by this court in Wilson v. State, 161 Tex. Cr. Rep. 152, 275 S.W. 2d 798.

Appellant and his wife, the deceased, lived in the Mt. Calm community in Limestone County. The evidence shows that on the afternoon of February 22, 1954, on an occasion when the appellant, his wife, and some children were attempting to drive a cow through a gate to a pasture, the appellant threw a rock which struck his wife on the head and inflicted fatal injuries from which she died three days later.

It was the state's theory that appellant intentionally threw

the rock at his wife, which appellant denied and contended that his wife was struck by accident.

Appellant's son, Dee Ray Wilson, who was six years of age at the time of the tragedy and one of the children who was helping drive the cow, upon being called as a witness by the state, testified that when his father threw the rock his father was behind the cow and that his mother was behind his father, and further testified, "He throwed towards my mamma," and "* * * he didn't throw it at the cow." Dee Ray further testified that he had seen his father hit his mother before, once with a wrench over the eye, and with a hammer on the leg.

The state offered witnesses whose testimony showed a prior course of harsh and cruel treatment by the appellant towards his wife. Under their testimony it was shown that on occasions when appellant's wife would be helping him with the farm work he would curse, strike her with his fist and slap her.

The state's testimony further shows that prior to the day of the tragedy the appellant, upon coming to the home of the witness Alfred Kline, when asked why he did not bring his wife, stated to the witness, "Well, I just can't get along with her. She makes me so mad I could knock her in the head with a rock," and that at the hospital in Waco before his wife died, appellant, telling the witness L. W. Neal how the tragedy happened, stated that it was not an accident.

Appellant, as a witness in his own behalf, testified that he threw the rock at the cow, with no intention of hitting his wife, and stated that she was struck by accident. He further denied the acts of misconduct which the state's witnesses testified he had committed upon his wife, and offered numerous witnesses who had known him and his wife during her lifetime and who testified that they appeared to be very much in love and devoted to each other.

The jury chose to accept the state's version of the transaction and we find the evidence sufficient to support its verdict

Appellant contends that the court erred in permitting the state to introduce in evidence, over his objection, a rock that contained grass and blood stains, which Sheriff Jack Bothwell testified he picked up near a spot of blood at the scene of the killing while making an investigation four days thereafter. It

is appellant's contention that that the rock was not sufficiently identified as the one thrown by him in view of the sheriff's testimony that he could not say it was the rock that hit appellant's wife and the appellant's testimony that the rock he threw was smaller than the rock introduced in evidence.

Under the record, the court did not err in permitting the rock to be admitted in evidence. In prosecutions for homicide the weapons with which the crime was committed, or alleged to have been committed, are admissible in evidence. 22 Tex. Jur., Sec. 200, p. 791. The identification of the rock, as having been found at the scene of the killing, was sufficient to authorize its admission in evidence. The lack of positive identification of the rock as the one thrown by appellant affected its weight as evidence rather than its admissibility. 18 Tex. Jur., Sec. 204, p. 330.

We find no merit in appellant's contention that the court commented upon the weight of the evidence by presuming that the rock introduced in evidence was thrown by him in instructing the jury in Paragraph No. 13 of the charge that the rock introduced by the state was not a deadly weapon per se, and that the law did not presume that the appellant intended to kill the deceased "from the means used, that is, the use of the rock." It is apparent that the court's instruction referred to the rock which had been introduced in evidence, and, under appellant's admission that he threw the rock that killed his wife, such instruction was favorable to him and no possible injury is shown.

Appellant complains of the refusal of the court to declare a mistrial following a statement made by the special prosecutor while cross-examining appellant's witness A. E. Thatcher.

The record shows that after the witness had testified on direct-examination that appellant and his wife were a devoted couple, on his cross-examination by state's counsel the following transpired:

"Q. And if he was down there when his wife was pregnant had her holding up, working on a cultivator and sweeps, putting them on a tractor and she let her end of it slip and he slapped her and cursed her under the circumstances would you think he would be a devoted husband? A. Did he do that?

"Q. I am asking you if he did do that would you think * * * there is testimony in this record that he did, fi he did do

that would you think that he was a devoted husband? A. Sir, I don't know that he did that.

"Q. Well, assuming that he did do it? A. That's hard to do.

"Q. You can't assume it? A. Could you?

"Q. I certainly can and I believe it with my whole heart that he did it."

It is shown that upon appellant's objection to the remark by state's counsel, the court instructed the jury not to consider the statement and then admonished counsel not to make any such statement again and admonished the witness not to answer the questions by asking a question.

Appellant insists that the statement by state's counsel was an expression of his personal opinion of appellant's guilt which constituted such error that could not be cured by the court's instruction. With this contention we do not agree. The statement was not that state's counsel believed appellant was guilty of the offense charged but that he could assume that appellant had slapped and cursed his wife, as testified to by a state's witness, and that he believed that he did so slap and curse his wife. In jury argument it has been held that state's counsel has a right to assume that the state's witnesses testified truthfully. Clark v. State, 117 Tex. Cr. R. 153, 35 S.W. 2d 420. In view of the court's instruction to the jury not to consider the statement, no reversible error is shown in the refusal of the court to declare a mistrial.

The record presents five bills of exception in which appellant complains of certain jury argument made by state's counsel.

Bill No. 4 complains of argument of the special prosecutor in which he inquired of the jury if they remembered seeing all witnesses get up and be sworn except Mrs. Elizabeth Webb, and that at his suggestion Mrs. Webb was called up and sworn by the court. Appellant objected on the ground that the statement was not warranted by the record and was highly prejudicial. We do no think the argument complained of was so manifestly harmful and prejudicial as to require a reversal, as the record reflects that Mrs. Webb was under subpoena in the case and on attendance in court.

Bill No. 5 does not reflect error, as the record shows that the argument complained of was supported by the testimony.

By Bill No. 6 appellant complains of the action of the court in overruling his objection to the following argument made by the state's special prosecutor:

"Now I want to talk about the witness Alfred Kline. I don't know what the meaning of the remarks made here are, but I think they are trying, in order to cover up the testimony of Al Kline, they try to say that he was a fixed witness and I want to tell you that is one thing that I resent. And if they want to open this case up and go into that matter we are willing to do it. They had plenty of time * * *."

From a reading of the argument, above quoted, it is obvious that the same was made by state's counsel in answer to argument made by appellant's counsel and therefore no error is shown.

By Bill of Exception No. 7 appellant complains of the following argument made by the special prosecutor:

"Now then, Mr. Hurst, they jump all over him * * * I tell you it is getting where you can't get a witness to come into the courtroom and testify in a case. Why is it * * * *."

It is appellant's contention that such argument was calculated to prejudice and inflame the minds of the jury against him in that it conveyed to the jury the thought and idea that appellant's counsel had attempted to browbeat and humiliate the state's witnesses in an attempt to suppress evidence. With this contention we do not agree. The demeanor of appellant's counsel in examining the state's witness Hurst and the other witnesses had been observed by the jury. There is nothing in the record or argument complained of from which it could be inferred that the jury was led to believe that the appellant or his counsel had caused any witness to evade process and fail to appear and testify.

Bill No. 8 complains of certain jury argument made by the special prosecutor and sets out the entire argument, with appellant's blanket objection thereto. This bill is insufficient and presents nothing for review because a portion of the argument complained of was proper and appellant in his objections failed to specifically point out the objectionable portion of the argu-

ment of which he was complaining. Loving v. State, 152 Tex. Cr. R. 427, 214 S.W. 2d 795; Watkins v. State, 153 Tex. Cr. R. 559, 223 S.W. 2d 24; and Robinson v. State, 156 Tex. Cr. R. 6, 238 S.W. 2d 193.

By Bill of Exception No. 3 appellant complains of the action of the court in furnishing the jury with a form for a verdict of "not guilty" after the argument had been concluded and the jury had deliberated upon a verdict for an hour and twenty minutes. The record shows that the charge, as originally delivered to the jury, had attached thereto a sheet containing three forms of verdicts, in the event the jury found appellant guilty of murder with malice, murder without malice, or aggravated assault, but did not contain a form for a verdict of "not guilty;" that while the jury was deliberating it was discovered that they had not been furnished with a "not guilty" form of verdict; and upon their returning to the court room for additional instructions, the court corrected the verdict sheet attached to the charge by including a "not guilty" form of verdict and instructed the jury to return to the jury room, detach the verdict sheet, and insert whatever their verdict might be in the correct place on the corrected verdict sheet. The jury then retired to the jury room and thereafter, in five minutes, returned into court their verdict of guilty.

We perceive no reversible error in the action of the court in correcting the verdict sheet attached to the charge. The addition of the "not guilty" form of verdict was favorable to and for appellant's benefit. The jury was furnished with a "not guilty" form of verdict before they returned their verdict into court. Therefore, under the record, no injury is shown.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge.

We have carefully considered appellant's motion for rehearing and remain convinced that we correctly disposed of this cause on original submission.

Appellant's motion for rehearing is overruled.